# In re Jacques MARTIN, Respondent

File A30 335 457 - Suffield

*Decided September 26, 2002*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The offense of third-degree assault in violation of section 53a-61(a)(1) of the Connecticut General Statutes, which involves the intentional infliction of physical injury upon another, is a crime of violence under 18 U.S.C. § 16(a) (2000) and is therefore an aggravated felony under section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) (2000).

FOR RESPONDENT: Michael G. Moore, Esquire, Springfield, Massachusetts

BEFORE: Board En Banc: SCIALABBA, Chairman; DUNNE, Vice Chairman; HOLMES, HURWITZ, VILLAGELIU, COLE, GUENDELSBERGER, GRANT, MOSCATO, MILLER, OSUNA, OHLSON, and HESS, Board Members. Dissenting Opinion: ROSENBERG, Board Member, joined by ESPENOZA, Board Member; PAULEY, Board Member, joined by SCHMIDT, FILPPU, and BRENNAN, Board Members.

COLE, Board Member:

In a decision dated January 9, 2002, an Immigration Judge concluded that the respondent was removable from the United States under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2000), as an alien convicted of an aggravated felony. The respondent has appealed from that decision, arguing that the Immigration Judge erred as a matter of law in finding him removable and requesting that removal proceedings be terminated. The Immigration and Naturalization Service has not filed an opposition to the respondent's appeal. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Canada who entered the United States as a lawful permanent resident in 1970. The record reflects that on April 19, 2001, he was convicted pursuant to a guilty plea in the Superior Court for the Judicial District of New Britain, Connecticut, of the offense of third-degree assault in violation of section 53a-61 of the Connecticut General

Statutes, which is a class A misdemeanor under Connecticut law. He was sentenced to a 1-year term of imprisonment.

On the basis of this conviction, the Service charged the respondent with removability as an alien convicted of a crime of violence for which a term of imprisonment of at least 1 year was imposed, which is an aggravated felony under section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (2000). The Immigration Judge sustained the charge of removability, finding that the respondent's offense constituted a "crime of violence" under 18 U.S.C. § 16(a) (2000). Accordingly, the respondent was ordered removed to Canada.

## II. ISSUE

The respondent's appeal raises the question whether the offense of third-degree assault in violation of Connecticut law constitutes a crime of violence under 18 U.S.C. § 16 and is therefore an aggravated felony under section 101(a)(43)(F) of the Act.

## III. SCOPE OF REVIEW

Both the respondent's criminal conviction and his removal proceedings occurred in Connecticut. Because this appeal requires us to determine the scope of 18 U.S.C. § 16, a provision of federal criminal law incorporated by reference in the Immigration and Nationality Act, our adjudication is governed by the authoritative precedents of the United States Court of Appeals for the Second Circuit. *See, e.g.*, *Matter of Yanez*, 23 I&N Dec. 390 (BIA 2002); *Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989). Under general Second Circuit principles, the determination whether a state crime is a "crime of violence" must be made by reference to the statutory definition of the crime, as elucidated by the courts of the convicting jurisdiction. *See Dalton v. Ashcroft*, 257 F.3d 200, 205 (2d Cir. 2001) (relying on the statutory and decisional law of New York to determine that a conviction under section 1192.3 of the New York Vehicle and Traffic Law was not a crime of violence under 18 U.S.C. § 16(b)).

## IV. RELEVANT STATUTORY AUTHORITY

The respondent was convicted under section 53a-61(a) of the Connecticut General Statutes, which provides as follows:

> A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon.

Conn. Gen. Stat. § 53a-61(a) (2000). We agree with the Immigration Judge's conclusion that the respondent was convicted under section 53a-61(a)(1). Accordingly, we confine our analysis to that section, which criminalizes acts that intentionally cause "physical injury" to others.[1] The record of the respondent's conviction, which in this case includes an official transcript of his plea colloquy before the state trial judge, reveals that his conviction arose from an act of domestic violence in which he intentionally used actual and threatened physical force against his ex-girlfriend, with the intention of injuring her and with the result that she suffered a "physical injury."

Section 101(a)(43) of the Act defines the categories of offenses that qualify as aggravated felonies under the immigration laws and provides that the term "aggravated felony" applies to "an offense described in this paragraph whether in violation of Federal or State law." Included in the aggravated felony definition is

> a crime of violence (as defined in section 16 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least one year.

Section 101(a)(43)(F) of the Act. The term "crime of violence" referenced in this portion of the aggravated felony definition is, in turn, defined as

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

The offense of third-degree assault is classified as a misdemeanor under Connecticut law, and because the offense is punishable by a maximum term of imprisonment of 1 year, it is also a misdemeanor for purposes of federal law. *See* 18 U.S.C. § 3559(a)(5) (2000) (classifying "felonies" as offenses punishable by a term of imprisonment of *more than* 1 year). Therefore, the respondent's offense cannot constitute a crime of violence under 18 U.S.C. § 16(b), which is confined to felony offenses by its terms. The status of the respondent's offense as a crime of violence must therefore be examined by reference to 18 U.S.C. § 16(a).[2]

---

[1] For purposes of section 53a-61, Connecticut law defines "physical injury" as "impairment of physical condition or pain." Conn. Gen. Stat. § 53a-3(3) (2000).

[2] The Second Circuit has held that state misdemeanor offenses that satisfy the crime of violence definition of 18 U.S.C. § 16(a) may constitute aggravated felonies under section 101(a)(43)(F) of the Act if they result in a term of imprisonment of at least 1 year. *See United*

(continued...)

## V. ASSAULT OFFENSES AS CRIMES OF VIOLENCE
## UNDER 18 U.S.C. § 16(a)

The legislative history of the crime of violence definition provides explicit support for the conclusion that an assault involving the intentional infliction of physical injury has as an element the use of physical force within the meaning of 18 U.S.C. § 16(a). This conclusion is bolstered by recent decisions from several federal appeals courts interpreting 18 U.S.C. § 16 and other federal statutes containing virtually identical language, as well as Connecticut decisions indicating that the use or threatened use of physical force is inherent to the offense of third-degree assault under section 53a-61(a)(1).

### A. Legislative History of 18 U.S.C. § 16

The Senate Judiciary Committee's Report on the Comprehensive Crime Control Act of 1983, which defined the phrase "crime of violence" under 18 U.S.C. § 16, specifically stated that a crime of violence

> means an offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or any felony that, by its nature, involves the substantial risk that physical force against another person or property may be used in the course of its commission. *The former category would include a threatened or attempted simple assault or battery on another person . . . .*

S. Rep. No. 98-225, at 307 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3486-87 (emphasis added).

The Judiciary Committee Report also indicated in a footnote that offenses under 18 U.S.C. § 113(e) (now codified at 18 U.S.C. § 113(a)(5))—which criminalizes misdemeanor "simple assault" in cases arising within the maritime or territorial jurisdiction of the United States—would qualify as crimes of violence under 18 U.S.C. § 16(a). S. Rep. No. 98-225, at 307 n.11. As the Second Circuit has acknowledged, "simple assault" under 18 U.S.C. § 113(a)(5) embraces the common law meaning of the term, which is defined as a crime "'committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.'" *United States v. Chestaro*, 197 F.3d 600, 605 (2d Cir. 1999) (quoting *United States v. Johnson*, 637 F.2d 1224, 1242 n.26 (9th Cir. 1980)), *cert. denied*, 530 U.S. 1245 (2000).

---

[2] (...continued)
*States v. Pacheco*, 225 F.3d 148, 154-55 (2d Cir. 2000) (affirming a lower court finding that the defendant's conviction for misdemeanor simple assault under Rhode Island law constituted a crime of violence), *cert. denied*, 533 U.S. 904 (2001).

By expressly including misdemeanor simple assault offenses within the crime of violence definition at 18 U.S.C. § 16(a), Congress unequivocally manifested its understanding that assault offenses involving the intentional infliction or threatened infliction of "injury" or "bodily harm," such as those described by 18 U.S.C. § 113(a)(5) and section 53a-61(a)(1) of the Connecticut General Statutes, have as an inherent element the actual or threatened use of physical force.[3]

## B. Relevant Federal Decisional Law

### 1. Second Circuit

The Second Circuit has not yet confronted the precise question involved in this case, namely whether an assault offense defined under section 53a-61(a)(1) of the Connecticut General Statutes or another closely analogous statute has as an element the use, attempted use, or threatened use of physical force. However, the Second Circuit's criminal jurisprudence recognizes assault as an "offense that generically involves use of force against another person." *United States v. Morales*, 239 F.3d 113, 119 (2d Cir. 2000).

In *Dalton v. Ashcroft*, *supra*, the Second Circuit concluded that an alien convicted of driving while intoxicated in violation of New York law was not removable from the United States for having committed a crime of violence under 18 U.S.C. § 16. We have scrutinized the Second Circuit's analysis in *Dalton* at length, and we find the case instructive on certain pertinent points.[4]

---

[3] The dissenting opinion of Board Member Rosenberg asserts that the meaning of the word "element" appearing in 18 U.S.C. § 16(a) is so obvious that it is improper for us to consult legislative history as an aid to interpretation. *Matter of Martin*, 23 I&N Dec. 491, 501 n.2, 506 (BIA 2002) (Rosenberg, dissenting). However, three federal courts of appeals have, in contexts highly similar to those presented here, declined to interpret the word "element" in the manner advanced by the dissenting Board Members. Since the meaning of the word is less obvious than the dissenters suggest, it is entirely consistent with the law, and with our traditional practice, to consult reliable sources of legislative history as a means of determining whether "there is 'clearly expressed legislative intention,' contrary to [the statutory] language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses.'" *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987) (quoting *United States v. James*, 478 U.S. 597, 606 (1986); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)); *see also Matter of Blancas*, 23 I&N Dec. 458, 461 (BIA 2002); *Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153, 168 n.5 (BIA 2001) (Rosenberg, concurring and dissenting); *Matter of Li*, 20 I&N Dec. 700, 705 (BIA 1993). In the instant case, legislative history reflects a "clearly expressed legislative intention" regarding the status of simple assault offenses under 18 U.S.C. § 16(a) that is flatly contrary to the position advanced by the dissenters.

[4] For instance, *Dalton* suggests that the concept denoted by the phrase "*use* of physical force" implies an *intentional* (as opposed to accidental or reckless) availment of force. *See Dalton v. Ashcroft*, *supra*, at 206-07. This requirement is plainly satisfied by section 53a-61(a)(1) of

(continued...)

We conclude, however, that the rule of law articulated in *Dalton* is inapposite to the present case.

*Dalton* addressed 18 U.S.C. § 16(b), which applies only to a felony offense that "by its nature" presents a serious potential risk that physical force will be used in the course of its commission. As the *Dalton* court observed, the language of 18 U.S.C. § 16(b) required it to focus on the "intrinsic nature" of the offense, viewed in the abstract. *See Dalton v. Ashcroft*, *supra*, at 204. Applying this analysis, the court concluded that the offense of driving while intoxicated, viewed as an abstraction, did not present a serious potential risk that physical force would be used in its commission. By contrast, the case at bar concerns 18 U.S.C. § 16(a) and requires us to determine whether, as a factual matter, the respondent's assault offense under section 53a-61(a)(1) of the Connecticut General Statutes, which involved the intentional infliction of physical injury upon his victim, had the use of physical force as an element. We are not called upon to postulate whether the metaphysical concept of "assault" has physical force as an element.

## 2. Other Circuits

Because the issue in this case is a matter of first impression in the Second Circuit, it is entirely proper for us to consult instructive precedent from other circuits as an aid to interpretation. *See Matter of Yanez*, *supra* (looking to out-of-circuit law to determine the meaning of the phrase "drug trafficking crime" in a case where the circuit of immediate concern had not yet interpreted that phrase). The United States Courts of Appeals for the First, Eighth, and Ninth Circuits have held that state-law assault offenses involving the intentional infliction of physical injury have "as an element the use of physical force." *See United States v. Nason*, 269 F.3d 10, 20 (1st Cir. 2001); *United States v. Ceron-Sanchez*, 222 F.3d 1169, 1172-73 (9th Cir. 2000); *United States v. Smith*, 171 F.3d 617, 621 (8th Cir. 1999). Although none of these circuit court cases arose in the context of civil immigration proceedings, the legal issue resolved in each case was whether state assault offenses had as an element the use of physical force. We therefore consider the cases to be highly persuasive authority.

*United States v. Ceron-Sanchez*, *supra*, is a criminal case involving an alien charged with illegally reentering the United States after being deported

---

[4]  (...continued)

the Connecticut General Statutes, which carries a mens rea of "intent" with respect to both the requisite infliction of physical injury and the conduct that causes that injury. As a practical matter, an offender's reckless or negligent application of physical force cannot "cause" an *intentional* infliction of physical injury. On the contrary, for an injury to be inflicted intentionally, the physical force that "causes" the injury must also be "used" intentionally.

subsequent to an aggravated felony conviction. The Ninth Circuit concluded that the defendant's prior Arizona conviction for aggravated assault, i.e., assault with a deadly weapon or dangerous instrument, constituted a crime of violence under 18 U.S.C. § 16(a) and an aggravated felony under section 101(a)(43)(F) of the Act. The Arizona statute at issue in the case defined assault, in pertinent part, as "[i]ntentionally, knowingly or recklessly causing any physical injury to another person." Ariz. Rev. Stat. § 13-1203(A)(1) (2000). In rejecting the defendant's argument that a person convicted of reckless conduct under this statute would not have been convicted of a crime of violence, the court stated the following:

> [I]n order to support a conviction under § 13-1203(A)(1), the reckless conduct must have caused actual physical injury to another person. Therefore, the use of physical force is a required element of § 13-1203(A)(1). . . . Ariz. Rev. Stat. § 13-1203(A) requires either the use, attempted use, or threatened use of force against the person of another, and by incorporation, a conviction [for aggravated assault under Arizona law] meets the definition of crime of violence set out in 18 U.S.C. § 16(a).

*United States v. Ceron-Sanchez*, *supra*, at 1172-73.

In *United States v. Nason*, *supra*, the First Circuit was confronted with the question whether the offense of assault under Maine's general-purpose assault statute had as an element the use of physical force.[5] The Maine statute provided that "[a] person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another." Me. Rev. Stat. Ann. tit. 17-A, § 207(1) (West 2001). After observing that "[t]he breadth of conduct covered by the bodily injury branch of the . . . statute unambiguously involves the use of physical force," the court concluded that "to cause *physical* injury, force necessarily must be *physical* in nature. Accordingly, physical force is a formal element of assault under the bodily injury branch of the Maine statute." *United States v. Nason*, *supra*, at 20. The "bodily injury branch" of the Maine statute at issue in *Nason* is practically indistinguishable from section 53a-61(a)(1) of the Connecticut General Statutes.

Similarly, in *United States v. Smith*, *supra*, the Eighth Circuit concluded that the offense of assault as defined by Iowa law had the use of physical force as an element. The Iowa statute defined assault, in pertinent part, as "[a]ny act which is intended to cause pain or injury to, or which is intended

---

5 *United States v. Nason*, *supra*, and *United States v. Smith*, *supra*, involved federal prosecutions under 18 U.S.C. § 922(g)(9), which criminalizes the possession of firearms by persons previously convicted of a "misdemeanor crime of domestic violence." Like the phrase "crime of violence" at issue in the instant case, the phrase "misdemeanor crime of domestic violence" at issue in *Nason* and *Smith* is defined, in pertinent part, as an offense that "has, as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A)(ii) (2000).

to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act." Iowa Code § 708.1(1) (1999). After finding, on the basis of the state complaint, that the defendant had been charged under the "intended to cause pain or injury" clause of this statute, the court held that the defendant had pleaded guilty to "an offense with an element of physical force." *United States v. Smith*, *supra*, at 621. Once again, the "intended to cause pain or injury" clause of the Iowa statute at issue in *Smith* cannot be meaningfully distinguished from the Connecticut statute at issue in the instant case.

Thus, in addition to an authoritative statement of congressional intent regarding the applicability of 18 U.S.C. § 16(a) to simple assault cases, the three federal appeals courts that have confronted the question concluded that assault offenses involving the intentional infliction of physical injury include the use of physical force as an element.

## VI.   THIRD-DEGREE ASSAULT UNDER CONNECTICUT LAW AS A "CRIME OF VIOLENCE"

Congress explicitly directed that assault offenses be included in the crime of violence definition set forth at 18 U.S.C. § 16(a). Moreover, decisional law of several federal circuit courts holds that assault offenses involving the intentional infliction of physical injury have as an element the use of physical force. This authority compels the conclusion that the respondent's third-degree assault offense under section 53a-61(a)(1) of the Connecticut General Statutes constitutes a crime of violence and is therefore an aggravated felony under section 101(a)(43)(F) of the Act.

We agree with the conclusion of the First, Eighth, and Ninth Circuits that where proof of the intentional infliction of physical injury is necessary to sustain a conviction, as under section 53a-61(a)(1), the requisite injury must be "caused" by an intentional "use" of physical force. This conclusion is also supported by a review of Connecticut decisional law, which reveals that in all reported cases involving prosecutions under section 53a-61(a)(1), the "physical injury" necessary to sustain a conviction was caused by the defendant's intentional use or threatened use of physical force against the person of another. *See, e.g.*, *State v. Palozie*, 334 A.2d 468 (Conn. 1973) (victim slapped in the face and struck on the nose); *State v. Rodriguez*, 796 A.2d 611 (Conn. App. Ct. 2002) (victim punched in the face); *State v. Henderson*, 658 A.2d 585 (Conn. App. Ct. 1995) (victim grabbed, hit, and threatened with a knife); *State v. Egan*, 514 A.2d 394 (Conn. App. Ct. 1986) (victim slapped, kicked, and threatened); *State v. Atkinson*, 741 A.2d 991 (Conn. Super. Ct. 1999) (victim choked). Consequently, we conclude that the actual or threatened use of physical force is an inherent element of the offense described in section 53a-61(a)(1). The respondent's conviction under that

section constitutes a conviction for a crime of violence under 18 U.S.C. § 16(a). Further, because the respondent was sentenced to a 1-year term of imprisonment for the offense, it also constitutes an aggravated felony under section 101(a)(43)(F) of the Act, which renders him removable from the United States under section 237(a)(2)(A)(iii) of the Act.

## VII.  CONCLUSION

The respondent was convicted of a violation of section 53a-61(a)(1) of the Connecticut General Statutes, involving an assault that intentionally caused physical injury to his victim. The legislative history of 18 U.S.C. § 16 and the decisional law of Connecticut and several federal circuit courts of appeals compels the conclusion that this offense had as an element the use of physical force against the person of another, such that it may be deemed a "crime of violence" under 18 U.S.C. § 16(a). As a "crime of violence" under 18 U.S.C. § 16 for which a term of imprisonment of at least 1 year was imposed, the respondent's offense also qualifies as an aggravated felony under section 101(a)(43)(F) of the Act. Consequently, we agree with the Immigration Judge that the respondent is removable from the United States as an alien convicted of an aggravated felony under section 237(a)(2)(A)(iii) of the Act. The respondent has not requested any form of relief or protection from removal. Accordingly, the appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

*DISSENTING OPINION:*  Lory Diana Rosenberg, Board Member, in which Cecelia M. Espenoza, Board Member, joins

I respectfully dissent.

To uphold the Immigration Judge's conclusion that the respondent's misdemeanor conviction under section 53a-61 of the Connecticut General Statutes amounts to a crime of violence as defined in 18 U.S.C. § 16(a) (2000), we must find that "the elements of the offense [are] such that physical force is an element of the crime." *Matter of Sweetser*, 22 I&N Dec. 709, 712 (BIA 1999); *see also Matter of Alcantar*, 20 I&N Dec. 801, 808-09 (BIA 1994). As we emphasized in *Matter of Sweetser*, *supra*, "[T]he focus is on *the elements required to sustain the conviction.*" *Id.* at 6 (emphasis added) (citing *Matter of Pichardo*, 21 I&N Dec. 330 (BIA 1996)).

I agree with dissenting Board Member Pauley that the majority misapprehends the elements of the offense and fails to differentiate between the causation of an injury and an injury's causation by the "use of physical force." *Cf. Dalton v. Ashcroft*, 257 F.3d 200, 207-08 (2d Cir. 2001) (distinguishing the risk of injury and the "use of physical force" under 18 U.S.C. § 16(b)). However, I also take issue with the majority's failure to

give effect to the plain language of the statute and its insistence that the crime of intentionally causing physical injury necessarily has as "an *inherent* element" the actual or threatened "use of physical force." *Matter of Martin*, 23 I&N Dec. 491, 495, 498 (BIA 2002) (emphasis added). I am also troubled by the majority's disregard of applicable Board precedents and unwarranted reliance on out-of-circuit federal case law.

The actual or threatened *use of physical force* referred to in 18 U.S.C. § 16(a) is not an *element* that must be proved to sustain a conviction under section 53a-61 of the Connecticut General Statutes. As the respondent has not been convicted of an offense amounting to a crime of violence under 18 U.S.C. § 16(a), he is not removable as an alien convicted of an aggravated felony under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2000). Therefore, his appeal should be sustained and the proceedings should be terminated.

## I. ISSUE

The issue before us on appeal is straightforward: Is a misdemeanor conviction for third degree assault under section 53a-61 of the Connecticut General Statutes a crime of violence as defined in 18 U.S.C. § 16(a), i.e., is it "an offense that has as an *element* the use, attempted use, or threatened *use of physical force*"? (Emphasis added.)

## II. STATUTORY INTERPRETATION AND PLAIN LANGUAGE

It is settled doctrine that "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). *See generally* Ira J. Kurzban, *Kurzban's Immigration Law Sourcebook* 820 (8th ed. 2002). In addition, the Supreme Court has stated "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241-42 (1989); *United States v. Goldenberg*, 168 U.S. 95, 102-03 (1897); *Oneale v. Thornton*, 6 Cranch 53, 68 (1810)). Accordingly, "[w]hen the words of a statute are unambiguous, then . . . 'judicial inquiry is complete.'" *Connecticut National Bank v. Germain*, *supra*, at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

Section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (2000), provides that "[t]he term 'aggravated felony' means . . . a crime of violence (as defined in section 16 of title 18, United States Code . . .) for which the term of imprisonment is at least 1 year." In turn, 18 U.S.C. § 16(a) defines

a crime of violence as "an offense that has as an *element* the use, attempted use, or threatened *use of physical force* against the person or property of another." (Emphasis added.)[1]

We have found the language used by Congress in 18 U.S.C. § 16 to be plain and unambiguous. *Matter of Ramos*, 23 I&N Dec. 336, 339 (BIA 2002) (stating that "[w]here, *as here*, the language is plain," we would assume that the ordinary meaning of the words used reflects Congress' intent (emphasis added)); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984); *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982); *Richards v. United State*s, 369 U.S. 1, 9 (1962).[2] Our task, therefore, in determining the issue before us on appeal is to interpret the ordinary and commonly understood meaning of the terms "element" and "use of physical force" in 18 U.S.C. § 16(a), and then to evaluate the respondent's Connecticut misdemeanor conviction according to that interpretation.

## A. "Element" as Used in 18 U.S.C. § 16(a)

Our analysis begins with "'the language of the statute.'" *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992)). As the United States Court of Appeals for the Second Circuit, in which this case arises, has reiterated, "'[I]t is our duty to give effect, if possible, to every clause and word of a statute.'" *United States v. Gitten*, 231 F.3d 77, 80 (2d Cir. 2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)).

The statute in question, 18 U.S.C. § 16(a), refers specifically to crimes in which the *use of physical force* is an *element* of the offense. In legal usage, it is universally understood that an *element* is one of the factors, such as the actus reus, mens rea, and causation, that must be proved to obtain a

---

[1] As the respondent's conviction was for a misdemeanor, 18 U.S.C. § 16(b), which applies only to felony convictions, is inapplicable.

[2] The majority argues that the legislative history provides "explicit support" for the conclusion that the offense of intentionally causing physical injury has as an element the use of physical force. *Matter of Martin*, *supra*, at 494. However, "legislative history only comes into play where there is an ambiguity in the statutory language." *Apex Express Corp. v. Wise Co., Inc.*, 190 F.3d 624, 641 (4th Cir. 1999). At most, "we look to the legislative history to determine only whether there is 'clearly expressed legislative intention,' contrary to [the statutory] language, *which would require us to question the strong presumption that Congress expresses its intent through the language it chooses*." *INS v. Cardoza-Fonseca*, *supra*, at 432 n.12 (emphasis added) (quoting *United States v. James*, 478 U.S. 597, 606 (1986); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). Moreover, each offense must be construed according to the particular terms of the statute under which the offender is convicted. *Matter of B-*, 21 I&N Dec. 287, 289 (BIA 1996).

conviction of the crime defined in the statute the defendant is charged with having violated.  *See Black's Law Dictionary* 424 (7th ed. 1999); *see also Matter of Sweetser*, *supra*.

Whether or not a particular element exists turns on an examination of the individual statute.  *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  This examination is a categorical one, accomplished by "looking only to the statutory definition[] . . . and not to the particular facts underlying [the conviction]."  *United States v. Taylor*, 495 U.S. 575, 600 (1990); *see also Matter of B-*, 21 I&N Dec. 287, 289 (BIA 1996) (ruling that  under 18 U.S.C. § 16, "we look to the statutory definition, not the underlying circumstances of the crime"); *Matter of Bart*, 20 I&N Dec. 436, 438 (BIA 1992) (ruling that an element of an offense either is expressly articulated in the statute or required by state decisions to obtain a conviction).  If the relevant criminal statute is plain on its face, our consideration is limited to the elements necessary to prove a conviction under its terms, and additional evidence indicating the respondent's actual conduct is not pertinent. *See Matter of Perez-Contreras*, 20 I&N Dec. 615, 618 (BIA 1992) (holding that where the elements of an assault statute did not include use of a weapon, such evidence had no bearing on the nature of the offense).

Although we recently modified our reading of 18 U.S.C. § 16(b),  *Matter of Ramos*, *supra*, we have never deviated from our consistently held position that to constitute a crime of violence under § 16(a), the use of force must be an actual element of the underlying offense.  For example, in *Matter of Palacios*, 22 I&N Dec. 434 (BIA 1998), we ruled that "*either* the elements of the offense must be such that *physical force is an element of the crime*, *or* . . . the nature of the crime . . . must be such that its commission ordinarily would present a risk that physical force would be used against the person or property of another."  *Id.* at 436 (emphasis added) (citing *Matter of Alcantar*, *supra*, at 812).

Accordingly, in *Matter of Magallanes*, 22 I&N Dec. 1 (BIA 1998), *overruled on other grounds*, *Matter of Ramos*, *supra*, we found that "the statutory requirements for a [driving under the influence] conviction under either section 28-692(A)(1) or section 28-697(A)(1) *do not include as an element* the use, attempted use, or threatened use of physical force against the person or property of another."  *Id.* at 3 (emphasis added).  Likewise, in *Matter of Puente*, 22 I&N Dec. 1006 (BIA 1999), *overruled on other grounds*, *Matter of Ramos*, *supra*, we noted that the parties agreed that the Texas statute "*does not include as an element* the use, attempted use, or threatened use of physical force against the person or property of another" and ruled that "*[t]herefore, 18 U.S.C. § 16(a) is inapplicable* to this case." *Id.* at 1011 (emphasis added); *see also Matter of Ramos*, *supra*, at 339

("Neither party claims that the respondent's offense qualifies as a crime of violence under 18 U.S.C. § 16(a).").

Furthermore, in recently assessing the offense of sexual abuse of a minor, we found that "as the respondent's offense *does not involve as an element* the use of violent or destructive physical force, *it also does not qualify as a crime of violence pursuant to 18 U.S.C. § 16(a)*." *Matter of Small*, 23 I&N Dec. 448, 449 n.1 (BIA 2002) (emphasis added) (citing *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001)). Each of these cases reflects that we have interpreted the term "element" consistently with its common, ordinarily understood meaning in the context of criminal and immigration law—that the offense must require evidence of the use of physical force to sustain the conviction. According to this reading, the respondent's conviction "does not satisfy the test set forth at 18 U.S.C. § 16(a)." *Matter of Magallanes*, *supra*, at 3.

### B. "Use of physical force" as an Element of the Offense

The Connecticut offense of assault in the third degree requires proof that the defendant " *[w]ith intent to cause physical injury* to another person . . . *causes such injury* to such person or to a third person." Conn. Gen. Stat. § 53a-61(a)(1) (2000) (emphasis added). The elements of the offense are: intent to cause physical injury, to another person, and, causation of such injury to that person or a third person. The statute does not specifically refer to or require proof of the actual, attempted, or threatened use of physical force to sustain a conviction.

The "use of physical force" is a term of art with a specific and limited meaning. In legal usage, force is defined as: "Power, violence, compulsion, or constraint exerted upon or against a person or thing[;] . . . strength directed to an end." *Black's Law Dictionary* 644 (6th ed. 1990) (citation omitted). "Physical force" is "[f]orce applied to the body; actual violence." *Id.* at 1147. By contrast, an "injury" is defined as "[a]ny wrong or damage done to another, either in his person, rights, reputation or property. The invasion of any legally protected interest of another." *Id.* at 785.

In addition, the term "use" has been construed as meaning "active employment," *Bailey v. United State*s, 516 U.S. 137, 150 (1995), and "intentional availment." *United States v. Rutherford*, 54 F.3d 370, 373 (7th Cir. 1995) (citing *Webster's Ninth New Collegiate Dictionary* 1299 ( 1986)); *see also Black's Law Dictionary* 1541 (6th ed. 1990) (defining "use" as "[t]o make use of; to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of"). Thus, the term "element" used in relation to "use of physical force" covers only offenses in which there must be evidence of such violent force being intentionally and

actively attempted, threatened, or actually *used*, i.e., actively employed by the perpetrator.

It is clear from these definitions that the use of physical force and the causation of injury or resulting harm are not the same. *Dalton v. Ashcroft*, *supra*, at 207 ("There are many crimes that involve a substantial risk of injury but do not involve the use of force."). Consequently, the reference in 18 U.S.C. § 16(a) to a crime that has as an element the use of physical force does not encompass every offense in which an injury is caused, even if the injury could have been caused by force or there is a risk that the offender might have resorted to force. In *Matter of Sweetser*, *supra*, at 716, a unanimous 1999 decision, we agreed on such a distinction, stating that "'the use of physical force' is an act *committed* by a criminal defendant, while the 'risk of physical injury' is a *consequence* of the defendant's acts." Following *Matter of Sweetser* in *Matter of Puente*, *supra*, we acknowledged once again that while "[c]riminal offenses that carry a substantial risk that force will be used also share the potential to result in harm . . . we recognize that offenses that have the potential for harm do not always carry a substantial risk that force will be used in their commission." *Id.* at 1013 (emphasis added).

Therefore, the "element of the offense" inquiry made under § 16(a) and the "nature of the offense" inquiry made under § 16(b) are not interchangeable. Indeed, in *Matter of Puente*, *supra*, the majority criticized the respondent's argument because it "fail[ed] to acknowledge the significant contextual distinction between the term 'use' in § 16(a) and the phrase 'may be used' in § 16(b)," positing that "[t]he focus in § 16(a) is on the *statutory elements* of the offense, whereas the focus in § 16(b) is on the *nature* of the crime." *Id.* at 1012. Furthermore, the concurring Board Members in *Matter of Puente*, *supra*, reasoned that "[u]nder § 16(a), as under clause (i) of U.S.S.G. § 4B1.2(1), the offense must have, *as an element,* the use, attempted use, or threatened use of physical force," so that "the focus in § 16(a) is on the statutory elements of the offense and whether those elements specifically include the use (or attempt or threat) of force." *Id.* at 1016-17 (Grant, concurring). The concurring Board Members concluded, "[I]n the context of § 16(a), a requirement of specific intent to use force is a reasonable implication because force must be an element of the crime, not merely something that is a possible consequence or risk." *Id.* at 1017.

I agree with this differentiation. I also conclude, however, that this reasoning cannot be applied disparately, and that it controls the outcome of this case.

## III.  EVALUATION OF THE RESPONDENT'S CONNECTICUT CONVICTION IN RELATION TO THE FEDERAL IMMIGRATION STATUTE

It is well established that we look to the elements of the crime, as provided in the state law under which the alien was convicted, to determine the consequence of that conviction in removal proceedings. *Matter of H-*, 7 I&N Dec. 359, 360 (BIA 1956).  In *Matter of Torres-Varela*, 23 I&N Dec. 78 (BIA 2001), we reaffirmed that "the specific statute under which the conviction occurred is controlling."  *Id.* at 84 (citing *Matter of Khourn*, 21 I&N Dec. 1041, 1044 (BIA 1997)); *see also Matter of Short*, 20 I&N Dec. 136, 137 (BIA 1989) ("The statute under which the conviction occurred controls.").  In addition, state labels, i.e., how a state refers to an offense, do not determine whether a crime is a crime of violence.  *See United States v. Taylor*, *supra*, at 591-92 (citing *United States v. Nardello*, 393 U.S. 286, 293-94 (1969)).

The elements of an underlying criminal offense must correspond to those in the federal immigration statute for a conviction of that offense to support a removal order.  For example, in *Matter of Espinoza*, 22 I&N Dec. 889, 891 (BIA 1999), we determined that a conviction relating to misprision of a felony was not a crime relating to obstruction of justice under section 101(a)(43)(S) of the Act, because the elements of the crime of misprision of a felony require evidence "that the principal committed and completed the felony alleged and that the defendant had full knowledge of that fact, failed to notify the authorities, and took an affirmative step to conceal the crime."  Proof of such elements "do not constitute the crime of obstruction of justice as that term is defined in the United States Code."  *Id.* at 892 (referring to crimes that "have as an element interference with the proceedings of a tribunal or require an intent to harm or retaliate against others").

Consistent with the discussion of the term "element" above, we emphasized that "although misprision of a felony bears some resemblance to [the offenses listed in Title 18 of the Code], *it lacks the critical element* of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice."  *Id.* at 894 (emphasis added).  Consequently, we ruled that "[w]e do not believe that every offense that, *by its nature*, would tend to 'obstruct justice' is an offense that should properly be classified as 'obstruction of justice,'" *id.* at 893-94 (emphasis added), because to "include all offenses that have a tendency to, or by their nature do, obstruct justice would cast the net too widely."  *Id.* at 894.

Similarly, in adopting the phrase "crime of violence" and, in particular, by incorporating 18 U.S.C. § 16(a) into section 101(a)(43)(F) of the Act, Congress clearly chose to have the terms "element" and "use of physical force" govern our interpretation of offenses alleged to come under that

subsection.  The Connecticut assault statute under which the respondent was convicted lacks the critical element of the use of physical force that would be necessary for his conviction to qualify as a crime of violence under § 16(a).  It would "cast the net too widely" to treat every intentional assault offense that causes injury as a crime in which the use of force is an element.  *Matter of Espinoza*, *supra*, at 894.  Like the crime at issue in *Espinoza*, the crime defined in the Connecticut statute may bear some resemblance to a listed aggravated felony offense, but it is simply not a crime of violence as defined by the statute.

Nevertheless, the majority proceeds as though the question whether Congress has directly spoken to the precise question at issue, i.e., what is meant by Congress' use of the terms "element" and "use of physical force" in § 16(a), cannot be determined by reference to the plain language of the statute.  *Cf. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*, at 842-43.  First, the majority appeals to the legislative history as though that could trump the plain language of the statute.  However, as I noted above, and as all the authoritative judicial decisions indicate, resort to legislative pronouncements in the face of language that has an ordinary, commonly understood meaning is only appropriate in narrow circumstances in which the legislative history contains a "clearly expressed intention" contrary to the plain meaning of the statutory language.  *See supra* note 2 (citing *INS v. Cardoza-Fonseca*, *supra*, at 432 n.12); *see also Kurzban's Immigration Law Sourcebook*, *supra*, at 820.  These circumstances do not exist here.

The 1983 Senate Judiciary Committee Report, on which the majority relies, refers not only to the offense of simple assault, but to battery as well.  S. Rep. No. 98-225, at 307 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3486-87.  Furthermore, in *United States v. Chestaro*, 197 F.3d 600 (2d Cir. 1999), *cert. denied*, 530 U.S. 1245 (2000), cited by the majority, the Second Circuit stated simply that the reference to simple assault in 18 U.S.C. § 113(5), "has been held to 'embrace *the common law meaning* of that term.'"  *Id.* at 605 (emphasis added) (quoting *United States v. Stewart*, 568 F.2d 501, 504 (6th Cir. 1978)).  As the Supreme Court ruled in *United States v. Taylor*, *supra*, at 588-89, it does not follow that because Congress has historically classified a certain type of offense as a violent crime, every similarly entitled offense under state law amounts to a violent crime warranting sentence enhancement.  Likewise, although the legislative history indicates that Congress contemplated that an assault offense would constitute a crime of violence under 18 U.S.C. § 16(a), it is not necessarily the case that

every offense labeled an "assault" will so qualify, i.e., have as an element the use of physical force as defined in the statute.[3]

Second, the majority attempts to invoke an "inherent element" construct that is contrary to our established practice in assessing criminal convictions. To do so the majority must either ignore the common, ordinarily understood meaning of the term "element" in the context of criminal and immigration law or read into the language of the Connecticut statute a requirement that the use of physical force must be proved to sustain a conviction. In fact, neither the common law definition of simple assault relied on by the Second Circuit in *Chestaro*, nor the terms of the Connecticut statute under which the respondent was convicted necessarily require the use of physical force to sustain a conviction for the crime in question.

Connecticut state decisions indicate that an offender need not cause the injury himself, but may solicit, request, or command it, or aid another to cause the injury. *See State v. Barnett*, 734 A.2d 991 (Conn. App. Ct. 1999) (finding that evidence that the defendant pointed out homosexual inmates to other inmates during a prison riot was sufficient to establish intent to cause injury). Similarly, reckless operation of a motor vehicle may support a conviction for second degree assault. *See State v. Guitard*, 765 A.2d 30 (Conn. App. Ct. 2001). And, slipping a drug into the victim's drink will support a conviction for second degree assault. *See State v. Nunes*, 800 A.2d 1160, 1168 (Conn. 2002) (involving a jury instruction charging that "For you to find the defendant guilty of this charge *the state must prove the following elements beyond a reasonable doubt: That the defendant administered a drug, substance or preparation capable of producing stupor or unconsciousness or physical impairment to another person*" (emphasis added)).

In support of its "inherent element" approach, the majority cites to out-of-circuit cases such as *United States v. Ceron-Sanchez*, 222 F.3d 1169, 1172 (9th Cir. 2000), for the proposition that an intentional assault offense is a crime of violence. But before reaching such a conclusion, the court in

---

[3] The majority's citation to *United States v. Morales*, 239 F.3d 113, 119 (2d Cir. 2000), (considering an exception to the mandatory minimum sentence for a defendant who hit and struck a victim who precipitated the incident) continues to confuse state labels with elements of the offense. Although the Second Circuit noted in dicta that "Morales was not convicted of assault or any other offense that generically involves use of force against another person," *id*. at 119, it is misleading to suggest that the Second Circuit has found that all assault convictions under any state law would involve the use of physical force. Indeed, the court differentiated Morales' harrassment conviction under New York Penal Code § 240.26, which requires a showing that "with intent to harass, annoy or alarm another person . . . [the offender] strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same," from its understanding of the generic definition of offenses involving the use of physical force.

*Ceron-Sanchez* imposed the requirement that the """*full range of conduct encompassed by [the statute the defendant violated]*""" must constitute the aggravated felony in question. *United States v. Ceron-Sanchez*, *supra*, at 1172 (quoting *United States v. Estrada-Torres*, 179 F.3d 776, 781 (9th Cir. 1999) (quoting *United States v. Lomas*, 30 F.3d 1191, 1193 (9th Cir. 1994)). Such a conclusion cannot be reached here. The full range of conduct covered by the Connecticut statute does *not* constitute an aggravated felony, as the respondent's conviction can be obtained without proof that he used force. Thus, the majority not only places unwarranted reliance on out-of-circuit authority, but loses sight of the rule that each conviction must be construed according to its particular elements.

As dissenting Board Member Pauley points out, the statute under which the respondent was convicted covers intentional assault offenses that result from omissions as well as commissions. In *United States v. Gracia-Cantu*, 2002 WL 1827802, at *3 (5th Cir. 2002), the Fifth Circuit recently addressed these types of circumstances, finding that a prior offense criminalizing injury to a child would not constitute a crime of violence under 18 U.S.C. § 16(a) because the statute does not require that the perpetrator actually use, attempt to use, or threaten to use physical force against a child. The court reasoned that as "the offense of injury to a child is results-oriented, many convictions for this offense involve an omission rather than an intentional use of force." *Id.* (citing *United States v. Chapa-Garza*, 243 F.3d 921, 926 (5th Cir. 2001), as exemplifying that "a parent who leaves a young child unattended near a pool may risk serious injury to the child, but the action does not involve an intent to use force or otherwise harm the child.")

In addition, in numerous decisions, several circuit courts have concluded that the use of force was not an element of various assault or assault-related offenses alleged to constitute crimes of violence. For example, in *Sutherland v. Reno*, 228 F.3d 171, 175 (2d Cir. 2000), the Second Circuit acknowledged that "[t]he BIA determined that petitioner committed a 'crime of violence' within the meaning of § 16(b), but not under § 16(a) . . . [and] the parties do not dispute that petitioner's conviction fails to meet the § 16(a) definition." Similarly, addressing the crime of statutory rape, the Seventh Circuit ruled that "[b]y the terms of the statute, no physical force, or even the slightest threat of physical force, is necessary for a conviction; there is no 'element' of force, threatened or otherwise, in the crime." *United States v. Shannon*, 94 F.3d 1065, 1068 (7th Cir. 1996), *vacated in part en banc*, 110 F.3d 382, 384 (7th Cir. 1997) ("The use of force is not an element of second-degree sexual assault, so no finding on the question was necessary for conviction."). Finally, in *United States v. Martin*, 215 F.3d 470, 473-74 (4th Cir. 2000), the court ruled that bank larceny was not a crime of violence because it "lacks as a statutory element not only the use of force, violence, or intimidation, but also the taking from the person or presence of another."

In addition, in a Connecticut case involving intimidation based on bigotry, the Second Circuit concluded that that while the statute "clearly covers" some qualifying conduct, "it also covers conduct that falls outside that definition, because it addresses harassment as well as intimidation, and damage to 'real or personal property' as well as 'physical contact.'" *United States v. Palmer*, 68 F.3d 52, 56 (2d Cir. 1995). As the Sixth Circuit also has found, "[I]t is not enough that force is a conceivable means of accomplishing the offense. An assault could also be accomplished . . . by fraud, which would not involve an element of force or attempted or threatened force." *United States v. Arnold*, 58 F.3d 1117, 1122 (6th Cir. 1995) (concluding that "using a categorical approach, . . . assault with intent to commit sexual battery under Tennessee law is [not] a crime involving the use of force . . . for purposes of U.S.S.G. § 4B1.2(1)(i)"). By contrast, when a statute requires a forcible act as an element of the offense, its characterization as a crime of violence is clear. *See, e.g.*, *United States v. Brown*, 52 F.3d 415, 425-26 (2d Cir. 1995) (examining section 160.00 of the New York Penal Law, which defines robbery as "forcible stealing" in which a person "uses or threatens the immediate use of physical force upon another person").

These circuit court decisions addressing 18 U.S.C. § 16 or its exact counterparts raise serious questions concerning the result reached by the majority. *See Matter of Yanez*, 23 I&N Dec. 390, 396 (BIA 2002) (holding that the Board will defer to the majority of the circuit courts of appeals that have determined whether a controlled substance offense constitutes an aggravated felony under section 101(a)(43)(B) of the Act). The majority's analysis also rides roughshod over our decision in *Matter of Sweetser*, *supra*, in which the respondent was convicted of criminal negligence under a divisible statute in which an offender would be guilty of child abuse "if he *causes an injury* to a child's life or health or *permits a child to be unreasonably placed in a situation which poses a threat of injury* to the child's life or health." Colo. Rev. Stat. § 18-6-401(1) (1990) (emphasis added); *see also Matter of Sweetser*, *supra*, at 713.

According to the record of conviction in *Sweetser*, the respondent permitted "his stepson 'to be unreasonably placed in a situation which posed a threat of injury to the child's life or health'" and "resulted in the accidental drowning death of his stepson." *Matter of Sweetser*, *supra*, at 715. Yet, we did not find that such a conviction constituted an aggravated felony offense under either 18 U.S.C. § 16(a) or § 16(b). I cannot find that a conviction for assault under the Connecticut statute, without more, is materially different.

The majority decision cannot be reconciled with our precedent and is not supported by any controlling circuit precedent. Plainly, § 16(a) does not refer to an "inherent element" that is not articulated in the statute. The majority either confuses § 16(a) and § 16(b) or seeks to construe § 16(a) in a way that expands it beyond its terms. Simply stated, § 16(a) does not refer to conduct

that does not actually involve force as an element, but somehow inherently involves force, or sometimes might involve force, or occasionally involves force. 18 U.S.C. § 16. The use of force is not an essential element of the offense under Connecticut law and, therefore, a misdemeanor conviction under the state statute in question is not a conviction for an aggravated felony.

## IV. CONCLUSION

The language of the Connecticut statute compels the finding that the use, attempted use, or threatened use of physical force is not an "element" of any subsections of the statute. Thus, although the use or attempted use of physical force might be involved in a particular assault punishable under Connecticut law, it is not a necessary element of any one of the subsections defining the offense. Accordingly, I conclude that an offense under the Connecticut statute punishing misdemeanor assault does not fall within the 18 U.S.C. § 16(a) definition of a "crime of violence."

*DISSENTING OPINION:* Roger A. Pauley, Board Member, in which Paul Wickham Schmidt, Lauri Steven Filppu, and Noel Ann Brennan, Board Members, join

I respectfully dissent.

The majority dismiss the respondent's appeal from a decision of an Immigration Judge finding him removable for having been convicted of an aggravated felony on the basis of his misdemeanor conviction under section 53a-61(a) of the Connecticut General Statutes, for which he received a 1-year sentence of imprisonment. I disagree and conclude that this offense is not an aggravated felony under 18 U.S.C. § 16(a) (2000), the first prong of the "crime of violence" definition as incorporated into section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) (2000).[1] The majority misapprehend the elements of the respondent's offense and fail correctly to apply controlling case law of the United States Court of Appeals for the Second Circuit, within whose jurisdiction this case arises.

## I. RELEVANT STATUTORY PROVISIONS

The Connecticut statute at issue provided as follows at the time of the respondent's offense:

A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or

---

[1] It is common ground that the respondent's offense does not qualify under the second prong of the "crime of violence" definition, 18 U.S.C. § 16(b), because it is not a felony.

(2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon.

Conn. Gen. Stat. § 53a-61(a) (2000).

According to 18 U.S.C. § 16(a), the term "crime of violence" means "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

## II.  ANALYSIS

### A.  The Statute Has No Element of Physical Force

Because the plea colloquy shows that the respondent's conviction related to an act of domestic violence involving his intentional use of actual and threatened force against his ex-girlfriend that resulted in physical injury to her, the majority focus on the first branch of the above statute. *See* Conn. Gen. Stat. § 53a-61(a)(1).  But neither that branch of the Connecticut statute nor any other branch contains on its face an element[2] that the resultant "injury" to the victim have been caused by the "use, attempted use, or threatened use of physical force" as required by 18 U.S.C. § 16(a).[3]  Nor has the statute been construed by the Connecticut courts to contain such an element. *See State v. Tanzella*, 628 A.2d 973, 979-80 (Conn. 1993); *State v. Panella*, 682 A.2d 532, 535-36 (Conn. App. Ct. 1996).[4]  As it is evident that physical injury can be intentionally caused in many ways without the use of "physical force," or even without the use of *any* force,[5] it follows that the respondent's offense is not a "crime of violence" as defined in 18 U.S.C. § 16(a).

The majority rely on the fact that, under the Connecticut statute, all of the reported prosecutions have involved the use of violent force.  This is not surprising.  But it likewise is irrelevant.  Nor is it relevant that the

---

[2]  An "element" of a crime is a "fact necessary to constitute the crime" as defined by law. *See Mullaney v. Wilbur*, 421 U.S. 684, 697-99 (1975).  Such elements must be proved to the finder of fact beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 483-84 (2000).

[3]  While the third branch, not at issue, might arguably involve "physical force," it does not involve the "use" of such force because the required state of mind is only negligence. *See Dalton v. Ashcroft*, 257 F.3d 200 (2d Cir. 2001).

[4]  Likewise, cases under the similarly worded Connecticut second degree assault statute, a felony (the first paragraph of which differs from the statute at issue here in paragraph (1) only in requiring that the intended and resultant injury be "serious"), do not require proof of "physical force" even though most or all have been committed by this means. *See, e.g.*, *State v. Guitard*, 765 A.2d 30 (Conn. App. Ct. 2001).

[5]  For example, a person may intentionally cause physical harm by failing to perform a duty to warn an individual of imminent danger, or as a caregiver by failing to provide needed medicine.

respondent's crime was also of this character.  The statute itself does not *require* that this aspect—the use of violent "physical force"—be proved beyond a reasonable doubt for conviction.  Therefore, it is not an "element" of the Connecticut offense.

### B. The Second Circuit in *Dalton v. Ashcroft* Construes "physical force" in 18 U.S.C. § 16 and Its Relation to Resultant Injury in Such a Manner as To Compel the Conclusion That That Court Would Not Find That Such Force Is an Element Here

This commonsense conclusion, predicated on a reading of the Connecticut statute as construed by the courts of that State, is reinforced by the controlling decision of the United States Court of Appeals for the Second Circuit in *Dalton v. Ashcroft*, 257 F.3d 200 (2d Cir. 2001), with regard to the construction of the "crime of violence" definition itself.  *Dalton* involved the second prong of that definition, which defines a "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 16(b).  Significantly, this branch of the definition also contains the term "physical force."

In part IV of its opinion, the *Dalton* court pointed out the "logical fallacy inherent in reasoning" that simply because conduct results in injury, that injury must be the result of the use of physical force.  *Dalton v. Ashcroft*, *supra*, at 207.  The court gave as illustrations of recklessly or intentionally inflicted nonforcible injury (or substantial risk of injury) "leaving an infant alone near a pool" and statutes "criminalizing the use, possession and/or distribution of dangerous drugs."  *Id*.  The court also emphasized that the term "physical force" in 18 U.S.C. § 16(b) connoted a violent or destructive type of force and found, in part III of its opinion, that the offense at issue there, driving while intoxicated, did not meet the "crime of violence" definition because "[t]he physical force used cannot reasonably be interpreted as a foot on the accelerator or a hand on the steering wheel."  *Id.* at 206; *see also Rummel v. Estelle*, 445 U.S. 263, 282 n.27 (1980) ("Caesar's death at the hands of Brutus and his fellow conspirators was undoubtedly violent; the death of Hamlet's father at the hands of his brother, Claudius, by poison, was not.").  All other circuits to have considered the issue have likewise concluded that "physical force" in 18 U.S.C. § 16 means violent or destructive force.  *E.g.*, *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001); *Bazan-Reyes v. INS*, 256 F.3d 600, 611 (7th Cir. 2001); *United States v. Ceron-Sanchez*, 222 F.3d 1169, 1172 (9th Cir. 2000).[6]  The

---

[6] This view is buttressed by examining the "aggravated felony" definition in section 101(a)(43) of the Act as a whole.  In its first branch (A), that definition enumerates as aggravated felonies

(continued...)

majority's reliance on *United States v. Nason*, 269 F.3d 10 (1st Cir. 2001), and *United States v. Smith*, 171 F.3d 617, 621 (8th Cir. 1999), is misplaced, as those cases interpret "physical force" in the later-enacted statutes, 18 U.S.C. § 922(g)(9) and 18 U.S.C. § 921(a)(33) (defining the term "misdemeanor crime of domestic violence"), in light of their discrete legislative history. *See United States v. Nason*, *supra*, at 16-18.

While *Dalton* and the above-cited "crime of violence" cases under 18 U.S.C. § 16 mostly involve the second prong of the definition of that term, there is no reason to believe that Congress intended the identical phrase "physical force" in that statute to carry a different meaning in the two branches; indeed such a construction (for which there is no case law support so far I am are aware) would be quite remarkable.[7] Therefore, as many means exist (as previously noted and as the Second Circuit has confirmed) of intentionally inflicting physical injury *without* the use of "physical force" as mandated by the "crime of violence" definition, the Connecticut statute at issue in this case, as construed in light of the teaching of *Dalton v. Ashcroft*, *supra*, for cases like this one arising in the Second Circuit, fails to contain "as an element" that the offense involves the "use, attempted use, or threatened use of physical force."[8]  Nothing in the legislative history cited by the

---

[6] (...continued)
"murder" and "rape."  If all murders and rapes were crimes of violence, there would have been no need for this enumeration.  Congress is not presumed to legislate in a purely redundant fashion.  *See, e.g.*, *Freytag v. Commissioner*, 501 U.S. 868, 877 (1991) ("Our cases consistently have expressed 'a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment.'" (quoting *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 562 (1990))); *United States v. Menasche*, 348 U.S. 528, 538-39 (1955).  It appears, therefore, that Congress meant to insure that all murders and rapes were covered, even if they were committed in a nonviolent manner, e.g., by poison (in the case of murder, see *Rummel v. Estelle*, *supra*), or by rendering the victim unconscious through the administration of an intoxicant or drug (in the case of rape, see 18 U.S.C. §§ 2241(b)(2), 2242(2)).

[7] This is not a case where "the subject-matter to which the words refer is not the same in the several places where they are used, or the conditions are different, or the scope of the legislative power exercised in one case is broader than that exercised in another." *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932).  Instead, we are concerned here solely with the meaning of "physical force" in two parts of the same section of Title 18 as incorporated into Title 8 for immigration law purposes.

[8] In *United States v. Ceron-Sanchez*, *supra*, the Ninth Circuit found that an aggravated violation of Arizona's general assault statute, which is worded similarly to the Connecticut statute at issue here, was a crime of violence under 18 U.S.C. § 16(a).  But in that case, the aggravated charge required that the defendant be proved to have used "a deadly weapon or dangerous instrument."  No such element was present with respect to the respondent's offense.  We need not speculate as to whether the Ninth Circuit in that case may have fallen prey to the "logical fallacy" identified in *Dalton v. Ashcroft*, *supra*, at 207, of equating

(continued...)

majority (S. Rep. No. 98-225, at 307 (1983)) is to the contrary. That history was with respect to the federal assault statute, 18 U.S.C. § 113, which contains no definition of the offense and which the courts have interpreted to embody the very different common law definition of "assault." *E.g.*, *United States v. Bayes*, 210 F.3d 64, 68-69 (1st Cir. 2000); *United States v. Dupree*, 544 F.2d 1050 (9th Cir. 1976). This case, by contrast, involves a Connecticut statute that defines the offense in a manner that does not contain *as an element* the use, attempted use, or threatened use of violent physical force in order to inflict injury.

## III. CONCLUSION

For the reasons stated, I conclude that, within the jurisdiction of the Second Circuit, whose decisions are binding in this case, a violation of section 53a-61(a) of the Connecticut General Statutes is not a "crime of violence" under 18 U.S.C. § 16(a).[9] Despite the fact there are indications, as the majority point out, that some other circuits might reach a different result, *see supra* note 8, I therefore would sustain the appeal.

---

[8] (...continued)

resultant physical injury with the use of "physical force" in 18 U.S.C. § 16. *United States v. Ceron-Sanchez*, *supra*, at 1172 ("[T]he reckless conduct must have caused actual physical injury to another person. Therefore, the use of physical force is a required element of [the Arizona statute.]"); *see also United States v. Nason*, *supra*, at 20 (stating that "to cause *physical* injury, force necessarily must be *physical* in nature"). Without opining on the correctness of *Ceron-Sanchez*, it suffices to note the distinction in elements between that case and this one, and to point out that we are governed in this case by the precedents of the Second Circuit.

[9] Had Connecticut graded its offense as a felony, I would have little hesitation finding that it qualified as a crime of violence under 18 U.S.C. § 16(b) because of the substantial risk that violent force may be used in the offense. *See generally Sutherland v. Reno*, 228 F.3d 171 (2d Cir. 2000).